UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joseph Arrieta, (B74625), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 1:21-CV-03843 |
| v. | ) | |
| | ) | Honorable Edmond E. Chang |
| | ) | |
| David Mitchell, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joseph Arrieta, an inmate at the Pinckneyville Correctional Center, brings this *pro se* habeas corpus action, 28 U.S.C. § 2254, challenging the life sentence imposed against him by an Illinois state court. For the reasons explained in this Opinion, the petition is denied and the Court declines to issue a certificate of appealability.

**I. Subject Matter Jurisdiction**

Before turning to the merits of the habeas petition, the Court notes that it has subject matter jurisdiction to adjudicate this petition even though Arrieta previously litigated other habeas petitions in federal court. Generally speaking, a prisoner is limited to one federal habeas petition challenging the merits of his state conviction or sentence (with limited exceptions not applicable here), and if he wishes to bring a second or successive petition, then he must receive prior approval from the Circuit Court of Appeals. 28 U.S.C. § 2244(b); *Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (per curiam). But this rule is applied on per-state-judgment basis, meaning a federal petition filed against a particular state judgment does not count against a different

state judgment. *Magwood v. Patterson*, 561 U.S. 320, 331 (2010). When, like in this case, a prisoner was resentenced and a new state court judgment was imposed, the prisoner's first challenge to the new state court judgment is considered a "first" petition for purposes of the prohibition on unauthorized second or successive petitions. *Id.*; *Turner v. Brown*, 845 F.3d 294, 297 (7th Cir. 2017) ("The intervening sentence [] reset[s] the habeas counter for purposes of counting the number of petitions.").

Back in 2004, Arrieta challenged the then-existing state judgment, and that prior federal petition was dismissed as untimely under the statute of limitations, 28 U.S.C. § 2244(d). *Arrieta v. Briley*, No. 04 C 8012 (N.D. Ill.) (Andersen, J.) (R. 9.), *aff'm sub nom. Arrieta v. Battaglia*, 461 F.3d 861, 862 (7th Cir. 2006). That dismissal counts as a "first" petition for purposes of § 2244(b)'s prohibition on unauthorized second or successive petitions. *Altman v. Benik*, 337 F.3d 764, 765 (7th Cir. 2003) (per curiam).

But in 2012, Arrieta's life sentence was vacated by the Illinois state court in light of *Miller v. Alabama*, 567 U.S. 460 (2012). *Illinois v. Arrieta*, 2021 IL App (2d) 180037-U, ¶ 7. *Miller* held that a juvenile convicted for murder cannot be sentenced to life without the possibility of parole absent consideration of the juvenile's special circumstances. *Montgomery v. Louisiana*, 577 U.S. 190, 193 (2016). *Miller* also applies retroactively. *Id.* at 212. After the vacatur of his sentence, Arrieta was resentenced in 2017, though the state court again imposed a natural life sentence without the

2

possibility of release. *Arrieta*, 2021 IL App (2d) 180037-U, ¶¶ 11-65. Although the sentence ended up being the same, a new state judgment was entered.

Having completed his state challenge to this new judgment, Arrieta now brings this federal habeas petition to challenge the 2017 resentencing. R. 1. This petition is Arrieta's first challenge to the 2017 state court judgment, so it is a "first" petition for purposes of § 2244(b). The Court has jurisdiction to adjudicate the petition.[1]

## II. Background

Turning to the merits of the petition, the Court draws the following factual history from the state court record, R. 15, and state appellate court opinions. State court factual findings, including facts set forth in state court opinions, are presumed to be correct, and Arrieta has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Arrieta has not made that showing.

Arrieta was convicted of a double murder, along with aggravated unlawful restraint. *Illinois v. Arrieta*, 2011 IL App (2d) 100382-U, ¶¶ 3-4. The evidence at trial

---

[1] In 2012, Arrieta also filed a habeas petition challenging the constitutionality of the 1996 life sentence. *Arrieta v. Hardy*, No. 12 C 6397 (N.D. Ill.) (Zagel, J.). The assigned judge dismissed that petition as an unauthorized second or successive petition, 28 U.S.C. § 2244(b). No. 12 C 6397, R. 5. Like this case, the petition in No. 12 C 6397 argued that Arrieta's mandatory life sentence was unconstitutional because he committed the underlying murders when he was a juvenile. But the 2012 federal petition challenged the original life sentence from 1996, whereas this case challenges the life sentence imposed in 2017. So No. 12 C 6397 case was properly dismissed as an unauthorized second or successive petition (because it was the second merits challenge to the 1996 judgment). In contrast, this case is Arrieta's first challenge to the 2017 judgment.

showed that he went to the victims' home to rob them of money and a gun. *Id.* ¶ 3. Three witnesses, who were present during the murders, testified against Arrieta. *Id.* Also, one of the victims called 911 for help after being shot; he died, but he told the responding officer that "Joe" had shot him (Arrieta's first name is Joseph). *Id.*

In March 1995, Arrieta was three months short of his 18th birthday when he committed the murders. *Arrieta*, 2021 IL App (2d) 180037-U, ¶ 4 n.1. At the time of Arrieta's 1996 sentencing, Illinois law required the imposition of a mandatory life sentence for a defendant convicted of murdering multiple victims when he was 17 years of age or older at the time of the offense. *Id.* ¶ 5 (citing 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1994)). Over the next decade and a half, the Illinois courts affirmed Arrieta's conviction and sentence on direct appeal and rejected his multiple postconviction petitions. *Arrieta*, 2021 IL App (2d) 180037-U, ¶ 4. Also, as noted earlier in this Opinion, Arrieta's federal habeas petitions were denied. *Arrieta*, 461 F.3d at 862; *Arrieta v. Hardy*, No. 12 C 6397 (N.D. Ill.) (Zagel, J.).

Moving forward to 2012, as noted earlier, the state court vacated Arrieta's mandatory life sentence and ordered a resentencing in light of the Supreme Court's *Miller* decision. ¶ 7; *see also Miller*, 567 U.S. at 465 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). Although the resentencing was ordered in 2012, Arrieta was not resentenced until 2017. *Arrieta*, 2021 IL App (2d) 180037-U, ¶ 11. Most of this delay was due to the

4

prosecution's unsuccessful attempt on appeal to challenge the granting of a new sentence. *Id.* at ¶ 7.

After the state's unsuccessful appeal ended, the state trial court rejected Arrieta's request for funding to hire an expert witness to testify at the sentencing hearing on mitigation and on his rehabilitation potential. *Id.* at ¶¶ 8–9. At the 2017 resentencing hearing, the state court heard testimony about the underlying crime. *Id.* ¶¶ 11–19. The court also heard evidence of Arrieta's prior juvenile offenses, that is, his participation in a drive-by shooting (no one was injured) and his threats with a knife against a person. *Id.* ¶¶ 20–21. Evidence was also presented about Arrieta's membership in a gang in prison and being charged with five major prison disciplinary infractions. *Id.* ¶¶ 24–36. The trial court also heard several victim-impact statements. *Id.* ¶ 23.

In mitigation, Arrieta presented evidence from the prison correctional counselor who was assigned to Arrieta from 2007 through 2009. *Id.* ¶ 37. She testified that Arrieta was participating in prison programs and job assignments and had been polite and respectful in his interactions with her. *Id.* Arrieta's older brother testified about their childhood, explaining that they grew up in a tough neighborhood and were exposed to gangs and crime. *Id.* ¶ 38. His brother also detailed the impact on Arrieta of being placed in a youth home for two years, the death of a friend hit by a car, and the deportation of their father. *Id.* ¶ 39. The brothers spoke on a regular basis during Arrieta's incarceration. *Id.* ¶ 42. Although Arrieta was "very angry" when he first

5

went to prison, his brother explained that Arrieta had matured, and had been able to "contemplate" and "grow up" during his incarceration. *Id*. Arrieta's brother also explained that Arrieta was a positive influence on other inmates and was going to the library as much as he could to study. *Id*.

In mitigation, Arrieta also suffered from Perthes Disease as a child. *Id*. ¶ 40. This is a childhood condition in which the blood supply to the ball part of the hip joint is temporarily interrupted, disrupting the child's ability to walk. *Legg-Calve-Perthes Disease*, Mayo Clinic, *available at: shorturl.at/gJP59* (last visited Apr. 6, 2023). As a child, Arrieta spent months in a wheelchair in a hospital, did not regain the full ability to walk, and used crutches at the time of the murders. *Id*. ¶¶ 15, 40.

In his statement to the sentencing court, Arrieta took full responsibility for his actions, explaining that he was "truly sorry for what I have done." *Id*. ¶ 44. He claimed that he had witnessed domestic violence from a young age, including his mother stabbing his father. *Id*. Arrieta also spoke of the toll of being in a wheelchair as a child, having to endure multiple surgeries, and how his ability to walk was still not the same even after these surgeries. *Id*. He said the deportation of his father when he was a child "crushed" him, and also asserted that a fifth-grade teacher had molested him. *Id*. Finally, Arrieta admitted that although he had his "share of trouble" in prison, he explained that he had never injured anyone, and his goal was to one day be a paralegal or physical therapist. *Id*. ¶ 45.

6

The trial court resentenced Arrieta to life in prison without the possibility of release, and issued a 15-page opinion to explain the sentence. R. 15-23 at 1033–47. The opinion began by correctly explaining that the Supreme Court's *Miller* decision prohibits a mandatory life sentence on a juvenile, but a life sentence is still permitted if the sentencing court considers the unique nature of the juvenile when fashioning the sentence. *Id*. at 1033–35; *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021) ("In *Miller*, the Court allowed life-without-parole sentences for defendants who committed homicide when they were under 18, but only so long as the sentence is not mandatory—that is, only so long as the sentencer has discretion to consider the mitigating qualities of youth and impose a lesser punishment.") (cleaned up).

In addressing Arrieta's youth, the sentencing court noted that Arrieta was just three months short of his 18th birthday when he committed the crime. R. 15-23 at 1037. The court further asserted that there was nothing to suggest that Arrieta's age mitigated the offense. To the contrary, the court noted that the crime was a planned attacked. *Id*. The court also noted that a psychological evaluation done in 1988 showed that Arrieta had an I.Q. of 91, and his interactions with the criminal justice system before the murders should have led him to realize the consequences of committing the crimes. *Id*. The sentencing court also noted that Arrieta was not subjected to negative peer pressure that forced him into committing the crime. *Id*.

Beyond Arrieta's youth at the time of the offense, the sentencing court considered other circumstances: (1) Arrieta's family, home environment, educational and

7

social background, including parental neglect, physical abuse, or other childhood trauma; (2) Arrieta's potential for rehabilitation and evidence of rehabilitation; (3) the circumstances of the crime; (4) Arrieta's participation and specific role in the offense, including his level of planning before the offense; (5) Arrieta's ability to participate in his defense; (6) Arrieta's prior juvenile criminal history; (7) Arrieta's allocution at sentencing; and (8) the type of sentence imposed in similarly situated cases. *Id*. at 1037–42. After explaining all those considerations, the sentencing court reimposed a life sentence without parole. *Id*. at 1042–47.

On appeal to the Appellate Court of Illinois, Arrieta argued that (1) he should not have received a life sentence under *Miller* and under the Illinois state constitution's proportionate-penalty clause; (2) the trial court erred when denying his request for funding to hire an expert witness; and (3) the trial court erred at sentencing when relying on allegedly unsubstantiated evidence regarding his gang involvement. R. 15-16 at 2–6. The appellate court rejected the arguments and affirmed the life sentence. *Arrieta*, 2021 IL App (2d) 180037-U, ¶ 2. The Supreme Court of Illinois denied Arrieta's petition for leave to appeal. *Illinois v. Arrieta*, No. 127018, 169 N.E.3d 320 (Ill. May 26, 2021) (Table). Arrieta now brings this federal habeas petition. R. 1.

### III. Analysis

Arrieta's habeas petition argues that (1) the imposition of a life sentence without release was unconstitutional because the trial court erred in denying Arrieta's request for funds to hire a mitigation expert for sentencing; (2) Arrieta's Sixth

8

Amendment confrontation rights were violated when the trial court relied on a redacted statement from a jailhouse informant as part of the evidence at sentencing; (3) counsel was ineffective for failing to search for a mitigation expert before sentencing; and (4) appellate counsel was ineffective for failing to argue ineffective assistance of sentencing counsel for not raising the Confrontation Clause issue. R. 1 at 7–9. The State responds that all of these claims are procedurally defaulted. R. 14.

### A. Funding for Mitigation Expert (Claim One)

Arrieta's first claim is that the Eighth Amendment required the state court to grant his request for funding to hire an expert. The State argues that the claim is procedurally defaulted because Arrieta failed to properly preserve the issue in the state court due to non-compliance with state procedural requirements.

A claim is procedurally defaulted when the state court denies it on an "adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). Illinois law requires a defendant to make both a contemporaneous objection and preserve the issue in a timely post-trial motion. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). The failure to bring a proper objection and preserve the issue for appeal is an adequate and independent state procedural ground resulting in procedural default of the claim in the federal habeas proceeding. *Kaczmarek v. Rednour*, 627 F.3d 586, 594 (7th Cir. 2010). Also, the fact that the state court engaged in a plain-error review of the unpreserved claim does not defeat the procedural default. *Id*.

9

The State is right that Arrieta did not properly preserve the claim before the sentencing court in accordance with Illinois's procedural requirements. *See Arrieta*, 2021 IL App (2d) 180037-U, ¶ 96 ("Defendant acknowledges that he did not raise the denial of his motion for expert witness funding in his post-sentencing motion, but he argues that we may still review the issue for plain error."); R. 15-23 at 1062–72 (no advancement of the claim in Arrieta's post-sentencing motion). The claim is procedurally defaulted.[2]

For the sake of completeness, the claim would be meritless even if not procedurally defaulted. *Miller*'s direct holdings are that (1) an *automatic* mandatory life sentence without the possibility of release for a juvenile convicted of murder violates the Eighth Amendment; and (2) a sentencing court may impose a life sentence for a murder committed when someone is a juvenile so long as the sentencing court does consider the mitigating nature of youth and has the discretion to impose a sentence short of life without release. *Jones*, 141 S. Ct. at 1314. The Supreme Court has never required that a defendant in these circumstances receive the benefit of a publicly

---

[2]As previously explained, the Court understands this claim as Petitioner arguing that the sentencing court erred in denying his request for a publicly funded expert. His claim is not that the state court erred in imposing a life sentence under *Miller* based on the evidence (without the expert) that was before it. Assuming arguendo that Petitioner is making this other argument, the Court would have rejected it under the deferential standard of federal habeas review. 28 U.S.C. § 2254(d). The state court properly identified and applied the *Miller* standard. *Arrieta*, 2021 IL App (2d) 180037-U, ¶¶ 68-89. It recognized that it had the discretion, but was not required to, impose a life sentence. The court properly considered Petitioner's youth at the time of the murders in addition to other aggravating and mitigating factors when imposing the sentence. The life sentence was entered in accordance with *Miller*.

funded expert when presenting evidence on the mitigating nature of his youth. The lack of clearly established federal law on that point would doom this claim on the merits under the limits imposed by the Antiterrorism and Effective Death Penalty Act. 28 U.S.C. § 2254(d)(1); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

## B. Confrontation Clause & Ineffective Assistance
## (Claims Two, Three, and Four)

The State is also correct that Arrieta's remaining claims are procedurally defaulted. As a reminder, the remaining claims argue that (a) Arrieta's Sixth Amendment confrontation rights were violated when the resentencing court relied on a redacted statement from a jailhouse informant (Claim Two); (b) sentencing counsel was ineffective for failing to search for a mitigation expert before sentencing (Claim Three); and (c) appellate counsel was ineffective for failing to argue ineffective assistance of sentencing counsel for not raising the Confrontation Clause issue (Claim Four). These claims share the common flaw that they were properly preserved through the state court litigation.

To preserve a claim for federal habeas review, a prisoner must fairly present the claim through one complete round of state court review, including via a petition for leave to appeal before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018). To properly exhaust the claim, the prisoner must present the operative facts and controlling legal principles to the state court so that the court has a fair opportunity to

11

correct the alleged federal violation. *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (citations omitted).

On Claim Two, it is true that Arrieta challenged the introduction of the gang-related information in state court. R. 15-16 at 47–55. But the challenge was presented as a *state* law challenge on the introduction of evidence—not as a there *federal* law claim. *Id.*; *see also Arrieta*, 2021 IL App (2d) 180037-U, ¶¶ 108–16. A prisoner does not properly exhaust a *federal* law claim when he limits his briefing in state court to an alleged violation of *state* law. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam).

On Claims Three and Four, Arrieta failed to raise ineffective assistance of counsel arguments at any point in the state court proceedings. All in all, then, Claims Two, Three, and Four are procedurally defaulted.[3]

### C. Cause and Prejudice / Miscarriage of Justice

There are exceptions to procedural default, but Arrieta cannot successfully deploy the exceptions here. There is neither cause and prejudice for the defaults, nor will refusal to consider the arguments on the merits result in a fundamental

---

[3]For completeness' sake, the Court notes that Claims Two, Three, and Four are also meritless. Claim Two alleges a Confrontation Clause violation, but the Confrontation Clause does not apply at sentencing. *United States v. Ghiassi*, 729 F.3d 690, 695–96 (7th Cir. 2013). Claim Three challenges sentencing counsel's failure to obtain a mitigation expert, but there is nothing to suggest that Arietta was prejudiced by counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). As discussed earlier in the Opinion, the resentencing court heard extensive mitigation evidence, and Arietta does not identify what more the mitigation expert might have uncovered and presented. Finally, Claim Four is meritless because appellate counsel cannot be faulted for failing to raise the meritless Confrontation Clause issue on appeal. *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).

miscarriage of justice. On cause and prejudice, cause is defined as an "'objective factor, external to [Arrieta] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of sufficient cause include (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Here, the closest ground for cause and prejudice is ineffective assistance of counsel, but an ineffective assistance of counsel argument asserted to excuse a default must *itself* be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Arrieta has not exhausted any ineffective-assistance argument to excuse the default of his claims.

This leaves the fundamental miscarriage of justice (actual innocence) gateway to excuse Arrieta's defaults. The Supreme Court has left open the question of whether the fundamental miscarriage of justice gateway applies to alleged noncapital sentencing errors. *Dretke v. Haley*, 541 U.S. 386, 393–94 (2004). Even if this exception can apply to Arrieta's case, he cannot satisfy this "demanding" and "seldom met" showing of innocence (or, here, that the sentencing court would have sentenced him more leniently). *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Arrieta cannot show by clear and convincing evidence that,

13

but for a constitutional error, no reasonable sentencing judge, *see Sawyer v. Whitley*, 505 U.S. 333, 348 (1992), would have sentenced him to a life sentence without the possibility of parole. Of course not every judge would necessarily have resentenced Arrieta to life without release, but the purported errors (the Confrontation Clause argument and the hiring of a mitigation expert) do not so seriously undermine the life sentence that Arrieta can show that he has suffered a fundamental miscarriage of justice.

## IV. Conclusion

The habeas petition is denied, and the Court declines to issue a certificate of appealability. Arrieta cannot make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree, with the resolution of Arrieta's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). The defaults are crystal clear, and even on the merits—under the deferential standard of federal habeas review—are just as clear.

Arrieta is advised that this is a final decision ending his case in this Court. If Arrieta wishes to appeal, then he must file a notice of appeal with this Court within **30 days** of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Arrieta need not bring a motion to reconsider to preserve his appellate rights. But if Arrieta wishes the Court to reconsider its judgment, then he may file a motion under Federal Rule of Civil

14

Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled on. Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion too cannot be extended. Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). To repeat, however, if Arrieta just wants to appeal to the denial of the habeas petition, he must file the notice of appeal within **30 days** of entry of the judgment.

The Clerk is instructed to: (1) update the docket to reflect Respondent David Mitchell is the Warden, Pinckneyville Correctional Center; and (2) enter a Rule 58 judgment in favor of Respondent and against Arrieta. The tracking status hearing of June 2, 2023, is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 31, 2023

15